Thank you for waiting. We have two cases remaining. The first of them, Mendoza Cervantes v. Barr. When you're ready. Good morning. May it please the court, my name is Yesenia Boshamos. I'm on behalf of petitioners Gregorio Mendoza Cervantes and his family. And I reserve three minutes for rebuttal. So given the plain language of 8 U.S.C. 1252 A.2.A. barring review of expedited removal proceedings, do we have jurisdiction to review your petition and if so, why? I think you guys do have jurisdiction to review this just because this court has said that you guys have jurisdiction over Well we're kind of not, we're a panel. We're not really you guys. Oh, sorry. Why do you think we have jurisdiction please? Because it's a motion to reopen. It's not, we're not appealing, we're not asking to review the denial of the credible fear decision, just a motion to reopen. Do you concede then or do you think just unnecessary for us to reach whether the initial decision was reviewable? The initial decision is not reviewable according to law. It's not the immigration judge's decision to deny the credible fear is final. So your only argument is, but if it comes up as a motion to reopen, that's reviewable. So what's the difference? Well, the thing is that, your honors, in this case there were two petitioners that could have testified at court and one of the petitioners did not testify. So that's what we're basing our argument on, that she didn't have a chance to be heard and consequently she was order removed with a chance to being heard. But then to do that, we have to look at what happened. Because that if there's a process that's set out that when people, if that, you know, what happens is then they go to, if they state that they have a fear, then an immigration judge looks at it and then it's, I mean, an officer looks, an asylum officer looks at it and then it's reviewed by an immigration judge and then it specifically says you can't look at that anymore. And so what you're saying is, well, I don't really think that the hearing was done well, so then we have to look at the hearing to see if the hearing was done well. So we're reviewing what you said we can't review. Okay, I understand. That's, that's, yeah, it's, it's sometimes it's, are you trying to go through the back door because you can't come through the front door? No. Maybe the side door? No. But where would it end? How many motions to reopen? So we've got this problem, the statute says final, we get to final, and then you want to bring a motion to reopen, but where would it end? Would there be another motion to reopen after that? I don't think so. The thing is that if the BIA would have, if the, if the immigration judge, when he denied the motion to reopen, if he would have explained, like the board states in matter of MP, that the immigration judge must identify and fully explain the reasons for denying a motion to reopen, because otherwise the parties are deprived of due process, then you guys wouldn't have to, you guys, sorry, your honors, wouldn't have to, to look at what happened at the hearing. I think there's some, I can imagine that in some circumstances, perhaps if there's a denial, a real concern about denial of due process. But I'm also concerned about Monday morning quarterbacking and being afraid of the IJ. So here the IJ asked about the other petitioner and whether she would have a different story or anything else to say. Right. I think the record shows us that. Yes. He asked the husband, but I don't, he didn't ask her. And I believe like she's an adult and she should be able to speak for herself. Like she's not a minor that her husband could have had something different. Is there something else that immigration court then was deprived of mowing or considering? Well, they, I think, well, we'll actually never know. Like she didn't have a chance to testify in front of the judge. So. So even if we were, I'm assuming for the moment we have jurisdiction to review the denial of the motion to reopen. If all you can say is she was she wasn't allowed to testify, she was essentially asked to leave the courtroom because the child was crying. The husband tells the story. The husband says, well, in response to a question, no, we have the same reason. And you now come asking to reopen saying, I don't know what she would have said. Boy, that's not much. I mean, reopened for what? I mean, without even assuming that we have jurisdiction to review, unless you can say, well, here's the story she would have told. I mean, we reopened for nothing. We were open on a speculation that maybe she had a different story. Boy, that's not a very strong argument for reopening. Yeah, I understand. But in the same thing, she was ordered removed. And we think that she was deprived of the due process when she wasn't allowed to testify in front of the judge. Nobody asked her to come back in or anything. I understand that this is a problem. I mean, looking at this from the outside, I would like her to have been there so that she could have answered. Do you have any other story compared to your husband as to what you fear? And she could have said yes or no, and then off we went. I would very much like that information to have been in front of the IJ. I get that. Whether that's a due process violation, whether we have jurisdiction even to review that, that's a different question. Well, we believe that Your Honors have jurisdiction just because, like I said, what we're fighting is the denial of the motion to reopen without a proper reason to deny it. We're not asking the board to review the immigration judge's credible field decision. I think at its core, we have a person that was unable to have a chance to speak, to be heard, and was consequently ordered removed without a fair chance to explain her claim. We do not believe this request is like a second bite of the apple due to imminent removal for the petitioners. What we're asking from the court is just a fair chance to explain their claims. Okay. They could apply for asylum without sneaking in, though, can't they? I mean, they could initiate an asylum application from where they are, right? Well, the thing is that they went to the officer first. They got denied credible fear, and then they went to the judge, and they were ordered removed right there. Well, right, but I mean, there's nothing to say. So there's nothing to say that you couldn't file an application for them if you think you can do a better job and initiate that. They just wouldn't be here. They don't get to be here. Yes. Just mind right now, I think we're way past the one-year deadline to apply for asylum. Okay. Thank you. Okay. Thank you. You've saved some time. Good morning, Your Honors. May it please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. The Court, as indicated, lacks jurisdiction over this petition for review, as expressly stated in unequivocal statutory language. This Court has so held in two prior cases that are on all fours with this case, Garcia de Rincon and Pena. Well, we have recognized our own jurisdiction to review denials of motions to reopen. Yes. Does it make a difference that petitioners are seeking review of the denial of motion to reopen and not review of the underlying credible fear determination here? It's a distinction without a difference. Credible fear serves a very important efficiency purpose. This Court has upheld that process and recognized that as a necessary means for the agency to efficiently adjudicate similar claims that fall within its purview. Well, what about there's a case, Thuracegium. Thuracegium. Yes. Okay. That helped me there. And does that impact our review of the claims in this case? It does not. And why? It has no bearing on this case. Petitioner, that case involved habeas in a suspension clause claim. Petitioner has never raised, has never sought habeas, has never raised this argument, didn't provide a 28-J of Thuracegium to the Court. But also a key factual distinction is that Thuracegium was apprehended once he was already inside the United States. I think by 25 yards or something. It was just enough. Just over the line. And then filed a petition for habeas in district court. Correct. Procedurally different. Very procedurally different. So in response to Judge Callahan's question, could someone in the position of this petitioner here go to district court and file a habeas petition? Under Thuracegium, no. The distinction made in Thuracegium was distinguishing Garcia de Rincon was that, as Your Honor noted, Thuracegium was inside the United States versus someone applying for admission at the border. And that's a very critical distinction. Oh, that's the – forgive me. So these petitioners – right. That's right. They were not – they were at the border, presented themselves at the border. Right at the border. Thank you. Yes. So they get punished for – It does seem a little backwards. They didn't sneak in. They came in and knocked on the door. I believe, actually, they did try to sneak in, if I remember correctly. But you can't have it both ways. You're just saying that you're distinguishing the case because they presented themselves at the border. They didn't make it across. They attempted to enter the United States. Maybe we could do this with a hypothetical and get a little bogged down. I think I understand your distinction. I am really just trying to understand your answer to Judge Callahan's question. Sure. And it is what? Thuracegium does not apply because we are not coming out of the district court, first of all. We don't have a habeas request. Petitioners never raised a suspension clause claim. And you think they couldn't going forward because? It's possible. Perhaps they may. This is an issue that we would request the opportunity to provide supplemental briefing to properly break this down, given that it hasn't been addressed here. Based on that factual distinction, which is how this court distinguished Garcia de Rincon, was on that distinction was that thuracegium was actually in the United States versus Garcia de Rincon was at the border. Thank you. And am I right in understanding that if, in fact, this were instead of someone coming in for the first time and subject to expedited removal, instead someone had been removed previously and this were now reinstatement, that it would be reviewable? I believe that is Garcia de Rincon. I think that's. They get more process. A little bit, but not much. It was the same conclusion. It was totally backwards. So somebody who's been previously removed has come back in the country and is then subject to reinstatement of the removal order, gets more process than someone who comes in who's never previously been removed. Well, reinstatement and expedited removal are two different things. And the person who's subject to reinstatement of removal, that person gets judicial review of the reasonable fear determination, correct? No. That was Garcia de Rincon, held no jurisdiction over the credible fear denial. I'm talking about reasonable fear. Reasonable fear, yes. Reasonable fear is reinstatement. Is Your Honor asking about a reinstated expedited removal order? I am. That's Garcia de Rincon. They would not have review over the credible fear finding. There simply is no jurisdiction over credible fear findings in this court. If it's a reinstated non-expedited removal order, yes, there is review of the reasonable fear determination. But this is specifically exempted by statute. As Your Honor noted at the outset, the language is clear. This court has no jurisdiction except for an extremely limited three-piece inquiry, which simply doesn't apply here. You say motion to reopen. It's a distinction without a difference. Why is that so? Because I can imagine that someone comes in, they lose on the credible fear, and then for one reason or another something was missed and it wasn't their fault. It's apparent that the IJ really missed something and we make a motion to reopen. We're not asking that the decision of the IJ on the merits be revisited or reviewed by us. We're only asking reopen so you can look at what you didn't see before. Why is that a distinction without a difference? There's two parts to that. First, again, the statute is very clear as to what the court can review. If it's a systematic challenge to the credible fear process, that's an entirely separate review. What Your Honor is describing is not, yes, not getting at the merits of whether or not they had an actual credible fear, but whether or not the process complied with due process. Well, no, not even that. I'll take a nice simple one. The IJ heard X, but in fact the statement had been Y, and the IJ makes it very clear that the IJ misheard it. Like a translator left out the word not. Something really blatant, just as a hypo. And so now there's a motion to reopen saying, hey, you misheard it. IJ says phooey. And now there's a motion to reopen. Why? That does not strike me as a distinction without a difference. Well, there's two, again, two more differences there. First, in Pena, this court recognized that, as discussed in Garcia de Rincon, the court lacks jurisdiction over even constitutional claims or questions of law. That would be a, sounds like a due process type issue. No, it's just a mistake. He just made a mistake. Clear error of fact? You can say that, but I'm serious. That sounds like a clear. I'm talking common sense. He made a mistake. He read X and it was Y. You still have to look at what happened there. Right. And say that they did it wrong. That's reviewing some kind of legal question. It's doing what the statute says you can't do. Not necessarily say that they did it wrong. I think the question really is even less than that. It's just take another look. Exercise your discretion, even if a purely discretionary issue, but this was left out. I think what we are getting towards was discussed towards the end of Pena, which is the idea that there is no available review, or the idea that there might be no available review for what would be a gross miscarriage of justice. That phrase wasn't used in Pena, but it looked like the court was going there. If that were the case, the court in Pena kind of left that option open, and that maybe might be presented in the appropriate case. That's not what we have here. But perhaps in that case, if the court were to go there, again, that would be something we would need to separately brief and address whether that's possible, whether or not that would survive, given the clear language of the statute and this court's own precedence that this court simply lacks jurisdiction over the credible fear process. If there was that kind of clear error, again, the court runs into the statute. The Congress has been explicit that the court lacks jurisdiction over pretty much anything relating to credible fear, other than these three limited inquiries, none of which apply. Not to belabor the point, but we're talking about a hypothetical where we're not touching the merits of the decision, as Judge Callahan said right at the top of the hour. There are other instances where the questions are committed entirely to the discretion of the agency, but we hear motions to reopen. And we say, wait, whoops, it's an abuser's discretion to not have considered X. Yes, I think Your Honor is describing maybe like a cancellation of removal type motion to reopen. We have a case, for example, where we had a motion to reopen. It was denied. There wasn't a hearing, of course, and there had been sort of credibility determination. We said, well, no, wait a minute, you have to deem these correct. But we didn't touch the merits. Right, the discretionary part. It was the process. Right, right. And that's really her argument. She's stressing this is a motion to reopen. So could you? Right. What this is doing is creating an end around of the system. It certainly would be an end run if we used a motion to reopen to get at the merits. Absolutely. She's making a little bit different argument. They didn't consider everything. That's her argument. What is your response to that? If the court wants to get beyond what the statute permits, that's getting into a due process question. Was due process denied here? Getting into the actual process itself, did it comply? And as the court was discussing, I believe as Judge Fletcher was asking, reopen for what? You know, we have to look at the particular circumstances of this case. For what reason would the court do something exceptional here? And there is nothing. This case is really tough, right? Because here the IJ asked what about, as we've just a couple of now have mentioned, she was asked to step out. There was an inquiry. Would she have anything else to say? We still aren't told what was left out of the equation. But since you do have four minutes left on the clock, I'm wondering. If you talk about a hypothetical, is your position still that we would not have jurisdiction to even direct the agency to take another run at it? Yes. Because? I mean, I take it it's your position that Congress decided what process is going to happen here and it said you're going to have, you're going to talk to an asylum officer and then you're going to have it reviewed by an IJ and that's it. Right. And under this new authority. Thoracegium. You think it's Thoracegium? I've just written it down. That's what I was told in my office how to say it. I've been struggling with it all week, so I appreciate that for sure. Then the path is if someone gets over the line, and there's going to be really an incentive to get over the line, to go to district court to file a habeas. Correct. Okay. That's not final yet, is it? Thoracegium? Yeah. This court decided that on March 7th, so no. Yeah. The clock has not run on further review. If the court would like a supplemental briefing on the impact of that on this case and how to provide it. I mean, there's still time that, you know, we don't know. You would not know that whether it would go en banc unless it went en banc, and then it would be withdrawn, and then there would be that. So we. Best has not settled. Yeah. Correct. Sir, I mean, all those things haven't happened. There's a lot of things there. Right. With respect to the actual process here, in terms of her not, the wife not testifying, again, we don't know what more she would have offered. A motion to reopen in this circumstance typically would offer new evidence of some kind, and her argument is that she would have done better, I suppose, than her husband. That's the merits of the motion to reopen. Right. The merits you say we can't look at. Right. But procedurally, there's no objection at any level, or I shouldn't say at any level, there's no objection at the immigration court level that she should have testified. I believe, as Judge Kristen pointed out, that the immigration judge asked the petitioner, is your wife's fear the same as yours? And the husband says, yes. There's not an objection. I'd like her to testify. She doesn't come in and say, I'd like to testify. Well, she was excluded. No wonder she didn't come in. Excluded is perhaps. She's outside with the child. My reading of the transcript was that she voluntarily went outside. I don't think she was kicked out. It wasn't a sequestration. Again, I think it was an infant child, so it was probably just keeping the child from disturbing the proceedings. No, I think I read it exactly that way. And they weren't going to send the infant out all by the infant's self. Mom had to go. Right. Again, she still could have come in and said, I'd like to testify. The husband could have said, I'd like them to testify. They could have had every opportunity to obtain counsel. I don't think this is what I'm about to say is this case. But in certain circumstances, it is de rigueur that you interview the husband and the wife separately. You don't trust the husband to say, oh, no, I didn't beat her, or the wife to say, oh, no, you know. Now, this one doesn't smell like that. On the other hand, it is possible that the wife would have had a different story. It's possible. But the point of all of this, to bring it all back together, is that Congress limited what this court can do to look at all of this. Because that's the point of the expedited removal and credible fear process. It's to increase the efficiency of the system. This court has upheld the credible fear and expedited removal system on that basis. The agency needs this to be able to handle the incredible volume of cases. This court has handled three immigration cases today and handles thousands a year, just like our office does. This is an important element of the system that has been found to be constitutionally adequate as applied based on these facts. Again, this case is on all fours with Garcia de Rincon and Pena. And we ask that the court dismiss for lack of jurisdiction. The court has no further questions. Thank you. Thank you, Your Honors. You've saved some time. Yeah. Thank you. You didn't mention the latest Ninth Circuit case, Thuracegium. Are you familiar with that? No, Judge. What I can say about – Well, you wouldn't be able to say whether you think it has any impact on your claims. No. Okay. But I'll be able to do supplemental briefing if you, Judge, require. Well, it really, in terms of when it happens before you come to court and it's filed, you should – that's something that you should be prepared to talk about something if it – I don't think we need supplemental briefing. Thank you. In terms of jurisdiction of this court, in Tormatti v. INS, this court concluded that they do have jurisdiction over denial of motions to reconsider or motions to reopen over final orders of deportation. So I don't see why can't it be done in this case. They still have – they do have a final order of deportation anyway. Also, the government cites – I'm sorry. The board and the government cite authority ruling the lack of jurisdiction over the credible fear hearing, and we have never contested that. We know that it's unreviewable by this court and the BIA as well. But the statute of the jurisdiction of the board, though it doesn't specifically talk about motions to reopen, it does prohibit the credible fear decision to be reviewed. But I don't – it doesn't prohibit it for the motions to reopen to be reviewed. Like I said, we feel that these proceedings were fundamentally unfair. During that hearing, only the lead responder was allowed to testify, not his wife, and she was asked to leave the courtroom, and she was consequently order removed without a chance to being heard. So we think – we also think that the decision of the immigration judge in denying the motion to reopen did not comply with what the BIA has stated in matter of MP, that the immigration judge must identify and fully explain the reason why he's denying it so it doesn't violate the respondent's or the petitioner's due process. The immigration judge just wrote one sentence that said a full and fair hearing was conducted. He didn't explain anything. He didn't give much of you guys to review or the BIA. So that's why we think there was a – they were deprived of the due process. And so our conclusion is that the BIA erred in its affirmation of the immigration judge's denials of the motion to reopen, so we respectfully ask the court to grant the petition to review and remand the matter back to – for the agency for a full review. Okay. Any further questions from the bench? Thank you very much. Thank you. Thank both sides for their helpful arguments. Mendoza-Cervantes v. Barr submitted the last case on the argument calendar this morning, Davis v. Riverside School District.
judges: W. Fletcher, Callahan, Christen